**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| TYREE GAINES, | ) | |
| | ) | Civil Action No. 19 – 1160 |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Magistrate Judge Lisa Pupo Lenihan |
| | ) | |
| SUPERINTENDENT BRITTAIN and | ) | |
| ATTORNEY GENERAL OF THE | ) | |
| STATE OF PENNSYLVANIA, | ) | |
| | ) | |
| Respondents. | ) | |

## <u>MEMORANDUM OPINION</u>[1]

Currently pending before the Court is a Petition for Writ of Habeas Corpus ("Petition") filed by Petitioner Tyree Gaines ("Petitioner") pursuant to 28 U.S.C. § 2254.  (ECF No. 1.) Petitioner challenges his December 15, 2011 judgment of sentence out of Allegheny County that was imposed after he was found guilty of second-degree murder, robbery, and other related offenses.  For the following reasons, the Petition will be dismissed as untimely and, in the alternative, be denied.

A.    **<u>Procedural Summary</u>**

By Criminal Information filed at CP-02-CR-8915-2004, the Commonwealth of Pennsylvania charged Petitioner with one count of criminal homicide (Count 1), three counts of attempted criminal homicide (Counts 2-4), three counts of assault of a law enforcement officer (Counts 5-7), five counts of aggravated assault (Counts 8-12), one count of robbery with the

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including the entry of a final judgment.  (ECF Nos. 6 & 19.)

infliction of serious bodily injury (Count 13), one count of burglary (Count 14), one count of firearms not to be carried without a license (Count 15), four counts of recklessly endangering another person (Counts 16-19), and one count of criminal conspiracy to commit robbery and/or burglary (Count 20).  (Resp't Exh. 2, ECF No. 13-1, pp.15-19.)  On August 29, 2011, Petitioner appeared before the Honorable Donna Jo McDaniel ("the trial court" and "the PCRA court") and proceeded to a jury trial.  Prior to trial commencing the Commonwealth withdrew Counts 2 through 12.  On September 2, 2011, Petitioner was found guilty of second-degree murder at Count 1 and guilty as charged at Counts 13 through 20.  (Resp't Exh. 3, ECF No. 13-1, pp.20-21.)  On December 15, 2011, Petitioner was sentenced to life in prison without parole for the second-degree murder conviction and no further penalty at the remaining counts.  (Resp't Exh. 4, ECF No. 13-1, pp.22-25.)

Petitioner appealed his judgment of sentence.  (Resp't Exh. 5, ECF No. 13-1, pp.25-46.)  On May 22, 2013, the Superior Court of Pennsylvania affirmed Petitioner's judgment of sentence.  (Resp't Exh. 13, ECF No. 13-1, pp.140-49.)  Petitioner filed a Petition for Allowance of Appeal ("PAA") on June 20, 2013.  (Resp't Exh. 15, ECF No. 13-1, pp.153-76.)  The Supreme Court of Pennsylvania denied the Petition on October 29, 2013.  (Resp't Exh. 17, ECF No. 13-1, p.178.)

On October 27, 2014, Petitioner filed a *pro se* Petition pursuant to Pennsylvania's Post-Conviction Relief Act ("PCRA").  (Resp't Exh. 18, ECF No. 13-1, pp.179-209.)  The PCRA court appointed counsel to represent Petitioner who, on June 28, 2016, filed an Amended PCRA Petition on his behalf.  (Resp't Exh. 19, ECF No. 14-1, pp.1-15.)  On January 5, 2017, the PCRA court issued its Notice of Intent to Dismiss the PCRA Petition without a hearing.  (Resp't Exh. 21, ECF No. 14-1, p.37.)  On March 15, 2017, the PCRA court issued an order dismissing the

2

PCRA Petition without a hearing.  (Resp't Exh. 22, ECF No. 14-1, pp.38-39. Petitioner, through

counsel, appealed the denial of PCRA relief.  (Resp't Exh. 23, ECF No. 14-1, pp.40-61.)  On

May 14, 2018, the Superior Court of Pennsylvania affirmed the dismissal of the PCRA Petition.

(Resp't Exh. 29, ECF No. 14-1, pp.173-86.)  Petitioner, through counsel, filed a PAA on June

13, 2018.  (Resp't Exh. 31, ECF No. 14-1, pp.190-208.)  It was denied by the Pennsylvania

Supreme Court on September 26, 2018.  (Resp't Exh. 33, ECF No. 14-1, p.210.)

Petitioner initiated the instant habeas proceeding on September 1, 2019, at the earliest.[2]

(ECF No. 1.)  Respondents filed their Answer to the Petition on November 20, 2019.  (ECF Nos.

12-14.)

### B.  Factual Summary

The underlying facts of this matter, as summarized by the trial court, are as follows:

The evidence presented at trial established that Arika Hainesworth and her
four (4) year old son, Kyere, lived at 2340 East Hills Drive in the City of
Pittsburgh.  Ms. Hainesworth's boyfriend, Anthony Lemon, stayed at the house
occasionally, but was known to keep drugs and money in the house.

In the early morning hours of July 11, 2010, [Petitioner], Tyree Gaines,
along with two other men, co-Defendants Amir Ferguson and Richard Woodward,
broke into Hainesworth's residence for the purpose of stealing the drugs and
money they knew to be in the house.  The three (3) men initially approached the
front door and knocked, then left.  Hainesworth, who was at home watching
movies with her friends and son, looked out of the peep-hole in the door and saw
the men wearing black clothing and scarves over their faces.  She called another
friend, Terry Johnson, who had just left, and asked him to look around the area.
Johnson did not see anyone and returned to Hainesworth's residence.

Approximately fifteen minutes later, the three men knocked again.  This
time Johnson looked out the peep-hole and after seeing the three (3) men, he
instructed everyone to go upstairs and hide and to call the police.  The group hid
in Kyere's room, some inside the closet and some behind the bed.  Hainesworth
was on the phone with 911 when the men broke the front door down and entered

---

[2] This is the date Petitioner dated his cover letter and will therefore be considered the filing date pursuant to the
prison mailbox rule.  *See* Houston v. Lack, 487 U.S. 266 (1988).

the house.  The men searched the downstairs level of the home, but were unable to find the drugs and money.  [Petitioner] and Ferguson went upstairs and broke down the door of the bedroom where everyone was hiding.  They demanded that Hainesworth tell them where the drugs and money were, and when she did not, they grabbed Kyere, put the gun to his head and asked him where the items were. Kyere directed them to an air vent, where they found some money.  They then let Kyere go, but put the gun to Hainesworth's head and forced her to take them to the drugs.  Hainesworth and the men were downstairs, when Woodward, who had been standing by the patio door with an assault rifle, yelled that the police had arrived.  The men ran upstairs.

Shots were fired at police from inside the house and the officers returned fire.  [Petitioner] ran back downstairs, where he was able to escape out the front door.

Downstairs, City of Pittsburgh Police Officer Steven Sywyj had entered the house in pursuit of the men.  He encountered Hainesworth and told her to get out of the house.  As she fled, she was hit with a bullet fired from the house. Johnson came out of the room in an attempt to find and aid Hainesworth and was shot in the hand.  Eventually, [Petitioner] and Ferguson were able to escape the police, but were apprehended several days later.

(Resp't Exh. 9, ECF No. 13-1, pp.59-60.)

**C.  Discussion**

Petitioner raises four claims in his Petition.  First, Petitioner claims that the trial court abused its discretion by failing to grant his newly retained counsel a reasonable request for additional time to prepare for trial.  Second, Petitioner claims that trial counsel was ineffective for failing to object to Detective Sherwood's comment that referenced Petitioner's right to remain silent.  Third, Petitioner claims that his trial counsel was ineffective for failing to object to Detective Sherwood's testimony that she could see from a silent surveillance videotape that an officer was verbally telling Petitioner to drop his gun.  Fourth, Petitioner claims that trial counsel was ineffective for failing to object on the basis that Petitioner's right to a public trial was violated.

4

### 1.  <u>The Petition will be dismissed as untimely.</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes a one-year limitations period for state prisoners seeking federal habeas review.  It is codified at 28 U.S.C. § 2244(d) and it provides:

(1)     A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of –

    (A)     the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

    (B)     the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

    (C)     the date on which the constitutional right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

    (D)     the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

(2)     The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this section.

28 U.S.C. § 2244(d).

The statute of limitations set out in § 2244(d)(1) must be applied on a claim-by-claim basis.  <u>Fielder v. Varner</u>, 379 F.3d 113 (3d Cir. 2004), *cert denied*, 543 U.S. 1067 (2005).  In analyzing whether a petition for writ of habeas corpus has been timely filed under the one-year limitations period, a federal court must undertake a three-part inquiry.  First, the court must

determine the "trigger date" for the one-year limitations period pursuant to section 2244(d)(1). Second, the court must determine whether any "properly filed" applications for post-conviction or collateral relief were pending during the limitations period that would toll the statute pursuant to section 2244(d)(2).  Third, the court must determine whether any of the other exceptions or equitable tolling should be applied on the facts presented.

Here, it appears that the "trigger date" for all of Petitioner's claims is the date on which his judgment of sentence became final, which in this case was January 27, 2014, the last day Petitioner had to file a petition for writ of certiorari in the United States Supreme Court after the Supreme Court of Pennsylvania denied his PAA on October 29, 2013.  *See* <u>Swartz v. Meyers</u>, 204 F.3d 417, 419 (3d Cir. 2000) (noting that a judgment becomes "final" at the conclusion of direct review or the expiration of time for seeking such review).  Thus, the first day of Petitioner's one-year statute of limitations period was January 28, 2014, and, absent any tolling for "properly filed" applications for post-conviction relief, Petitioner had until January 28, 2015, to file a timely federal habeas petition challenging his judgment of sentence.  As previously noted, however, Petitioner did not file his Petition in this case until September 1, 2019, over four-and-a-half years later.  Accordingly, the Court must next determine whether Petitioner can take advantage of the tolling provision in section 2244(d)(2).

Section 2244(d)(2) provides that the one-year limitations period is tolled during the pendency of a "properly filed" state post-conviction proceeding.  Here, Petitioner filed a PCRA Petition on October 27, 2014, which was 272 days after his judgment of sentence became final. After the filing of the PCRA Petition, Petitioner's one-year statute of limitations was tolled until the Supreme Court of Pennsylvania denied his PAA on September 26, 2018.  With only 93 days remaining (365-272=93), Petitioner's one-year statute of limitations started to run again on

September 27, 2018, and it fully expired on December 28, 2018.  As previously stated, Petitioner did not file the instant Petition until September 1, 2019, over eight months later.  As such, the Petition was untimely filed.

Having failed to meet AEDPA's one-year statute of limitations, the Petition can only be saved by the application of equitable tolling or the Supreme Court's recognized fundamental miscarriage of justice exception.  *See* Holland v. Florida, 560 U.S. 631 (2010); *see also* McQuggin v. Perkins, 569 U.S. 383 (2013).  Petitioner appears to argue for the applicability of equitable tolling by claiming that, due to a state-wide lockdown which impacted the prison mailing system, he did not discover that his PAA had been denied until February 22, 2019, almost five months after it was actually denied by the Pennsylvania Supreme Court on September 26, 2018.  *See* ECF No. 1, p.13.  Petitioner claims that he can "prove" this because he is required to sign for legal paperwork and did not do so until the end of February 2019.  Id. While in his Petition he states that he was "waiting on documents from the jail security" to show that he did not receive the denial of his PAA from his attorney until February 22, 2019, id., Petitioner never provided any relevant documents to the Court.  Finally, and notwithstanding his argument about not receiving notification from his attorney until February 22, 2019, he also claims to have learned of the denial of his PAA on the law library computer, but he does not state on what day that occurred.  Id.  Presumably, though, it occurred prior to February 22, 2019.

A petitioner is entitled to equitable tolling only if he shows that: (1) he has been pursuing his rights diligently, and (2) some extraordinary circumstance stood in his way and prevented timely filing.  Holland, 560 U.S. at 649 (citing Pace, 544 U.S. at 418).  *See also* Ross v. Varano, 712 F.3d 784, 798-804 (3d Cir. 2013); United States v. Thomas, 713 F.3d 165, 174 (3d Cir. 2013); Munchinski v. Wilson, 694 F.3d 308, 329-32 (3d Cir. 2012).  "This conjunctive standard

requires showing *both* elements before we will permit tolling." Sistrunk v. Rozum, 674 F.3d
181, 190 (3d Cir. 2012) (emphasis in original).  The Third Circuit has advised that:

> "[t]here are no bright lines in determining whether equitable tolling is warranted
> in a given case." Pabon v. Mahanoy, 654 F.3d 385, 399 (3d Cir. 2011).
> Nevertheless, "courts must be sparing in their use of equitable tolling," Seitzinger
> v. Reading Hosp. & Medical Ctr., 165 F.3d 236, 239 (3d Cir. 1999), and should
> do so "only when the principles of equity would make the right application of a
> limitation period unfair." Miller [v. New Jersey State Dept. of Corr.], 145 F.3d
> [616, 618 (3d Cir. 1998)].

Sistrunk, 674 F.3d at 190.  "[E]ven in situations in which equitable tolling initially applies, a

party must file suit within a reasonable period of time after realizing that such a suit has become

necessary." Walker v. Frank, 56 F. A'ppx 577, 582 (3d Cir.2003) (citing Hentosh v. Herman M.

Finch University of Health Sciences, 167 F.3d 1170, 1175 (7th Cir. 1999)).  "A grant of

equitable tolling, unlike statutory tolling, does not shift the deadline so that each day of tolling

results in a one day postponement of the deadline." Ragan v. Horn, 598 F.Supp.2d 677, 680

(E.D. Pa. 2009) (citing Phillips v. Heine, 984 F.2d 489, 492 (D.C.Cir. 1993)).  "Rather, once the

'extraordinary circumstances' justifying equitable tolling have disappeared, the petitioner must

file as soon as 'reasonably possible'". Id. (quoting Walker, 56 F. App'x at 581-82).  "The United

States Court of Appeals for the Third Circuit has suggested that one month is a sufficient period

of time for a petitioner to file a pro se habeas petition." Mitchell v. Beard, No. 06-4746, 2010

WL 1135998, at *1 n.3 (E.D. Pa., 2010) (citing Brown v. Shannon, 322 F.3d 768, 774 (3d Cir.

2003)).  The Third Circuit has also held that eleven months is an unreasonable time to wait to file

a habeas corpus petition. Id. (citing Walker, 56 F. App'x at 582 n.5).

     Here, only 93 days remained of Petitioner's one-year statute of limitations period when

the Pennsylvania Supreme Court denied his PAA on September 26, 2018, and, despite allegedly

learning of the denial, at the latest, on February 22, 2019, Petitioner still waited until September

1, 2019, much longer than 93 days, to file his Petition with this Court.  Not only does this show that Petitioner was not pursuing his rights diligently, but even giving Petitioner the benefit of the doubt and tolling the period of time from the day his PAA was denied until the day he allegedly learned of its denial, from September 26, 2018 through February 22, 2019, his Petition would still be untimely by several months.[3]

Finally, although not stated as a reason why he believes the Court should equitably toll his statute of limitations, the Court would like to address Petitioner's reason for why he dated his Petition March 14, 2019.  Specifically, he states that it was because he initially mailed it to the wrong address and it was not returned to him until "months later."  *See* ECF No. 1-1.  Petitioner, however, does not state what address he originally mailed his Petition to and when his Petition was returned to him.  As such, the Court is unable to make an assessment as to whether Petitioner would be entitled to any equitable tolling under the circumstances and the Petition will therefore be dismissed as untimely.

## 2.  <u>Alternatively, the Petition will be denied on the merits.</u>

Pursuant to the AEDPA, a federal habeas court may overturn a state court's resolution of the merits of a constitutional issue only if the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  The phrase "clearly established Federal law," as the term is used in section 2254(d)(1) is restricted "to the holdings, as opposed to the

---

[3] The Court notes that Petitioner appears to miscalculate when his judgment of sentence became final for purposes of AEDPA's statute of limitations.  Petitioner states in his Petition that his judgment of sentence became final on September 26, 2018, following the Pennsylvania Supreme Court's denial of his PAA from his post-conviction proceedings.  This statement, however, is incorrect because Petitioner's judgement of sentence became final on January 27, 2014.

dicta of [the United States Supreme Court] decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362, 365 (2000).

The Supreme Court has identified two scenarios where a state court decision will fall into section 2254(d)(1)'s "contrary to" clause.  First, a state court decision will be "contrary to" clearly established federal law when the court "applies a rule that contradicts the governing law set forth in [Supreme Court] cases." Williams v. Taylor, 529 U.S. 362, 405 (2000).  It set forth the following example where a state court decision would be "contrary to" Strickland v. Washington, 466 U.S. 668 (1984), the familiar clearly established federal law governing ineffective assistance of counsel claims.

> If a state court were to reject a prisoner's claim of ineffective assistance of counsel on the grounds that the prisoner had not established by a preponderance of the evidence that the result of his criminal proceeding would have been different, that decision would be 'diametrically different,' 'opposite in character or nature,' and 'mutually opposed' to our clearly established precedent because we held in Strickland that the prisoner need only demonstrate a 'reasonable probability that . . . the result of the proceeding would have been different.'

Williams, 529 U.S. at 405-06 (internal citations omitted).  The Supreme Court said that a state court decision will also be "contrary to" clearly established federal law if it "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." Id. at 406.

The Supreme Court has said that under the "unreasonable application" clause of 28 U.S.C. § 2254(d)(1), a state court decision involves an unreasonable application of Supreme Court precedent "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." Williams, 529 U.S. at 407.  Under this standard, "a federal habeas court may not grant relief simply because that court concludes in its independent judgment that the relevant state-court

10

decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  Id. at 411.  The Supreme Court later expanded on this interpretation of the "unreasonable application" clause explaining that the state court's decision must be "objectively unreasonable," not merely wrong; even "clear error" will not suffice. Locklyer v. Andrade, 538 U.S. 63, 75 (2003).  "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 562 U.S. 86, 103 (2011).

If a petitioner is able to satisfy the requirements of § 2254(d)(1), then the state court decision is not entitled to deference under AEDPA and the federal habeas court proceeds to a *de novo* evaluation of the constitutional claim on the merits.  *See* Tucker v. Superintendent Graterford SCI, 677 F. App'x 768, 776 (3d Cir. 2017) (citing Panetti v. Quarterman, 551 U.S. 930, 953 (2007) ("When . . . the requirement set forth in § 2254(d)(1) is satisfied[,] [a] federal court must then resolve the claim without the deference AEDPA otherwise requires.").  Indeed, the Third Circuit recently explained that,

> [w]hile a determination that a state court's analysis is contrary to or an unreasonable application of clearly established federal law is necessary to grant habeas relief, it is not alone sufficient.  That is because, despite applying an improper analysis, the state court still may have reached the correct result, and a federal court can only grant the Great Writ if it is "firmly convinced that a federal constitutional right has been violated," Williams, 529 U.S. at 389, 120 S.Ct. 1495. *See also* Horn v. Banks, 536 U.S. 266, 272, 122 S.Ct. 2147, 153 L.Ed.2d 301 (2002) ("[w]hile it is of course a necessary prerequisite to federal habeas relief that a prisoner satisfy the AEDPA standard of review . . . none of our post-AEDPA cases have suggested that a writ of habeas corpus should automatically issue if a prisoner satisfies the AEDPA standard").  Thus, when a federal court reviewing a habeas petition concludes that the state court analyzed the petitioner's claim in a manner that contravenes clearly established federal law, it then must

proceed to review the merits of the claim *de novo* to evaluate if a constitutional violation occurred.  *See* <u>Lafler v. Cooper</u>, 566 U.S. 156, 174, 132 S.Ct. 1376, 182 L.Ed.2d 398 (2012).

<u>Vickers v. Superintendent Graterford SCI</u>, 858 F.3d 841, 848-89 (3d Cir. 2017) (internal footnote omitted).

The AEDPA further provides for relief if an adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  Under § 2254(d)(2), a state court decision is based on an "unreasonable determination of the facts" if the state court's factual findings are "objectively unreasonable in light of the evidence presented in the state-court proceeding," which requires review of whether there was sufficient evidence to support the state court's factual findings.  *See* <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340 (2003).  Within this overarching standard, a petitioner may attack specific factual determinations that were made by the state court, and that are subsidiary to the ultimate decision.  Here, § 2254(e)(1) comes into play, instructing that the state court's determination must be afforded a presumption of correctness that the petitioner can rebut only by clear and convincing evidence.  <u>Lambert v. Blackwell</u>, 387 F.3d 210, 235 (3d Cir. 2004).

### i.    <u>Claim One</u>

In Petitioner's first claim he argues that the trial court abused its discretion by failing to grant his newly retained counsel's request for additional time to prepare for trial.  To put this claim in context, Petitioner was initially represented by an attorney from the Office of the Public Defender.  However, in the early afternoon on the day jury selection was originally scheduled to being, James Sheets, Esquire ("Attorney Sheets" or "Mr. Sheets") telephoned the trial court and advised its staff that he would be entering his appearance the next day and that he intended to ask

for a continuance.  Attorney Sheets then appeared on the morning of jury selection, on August

16, 2011, entered his appearance and sought a continuance because he was not prepared.[4]  The

trial court stated that she would accept counsel's entry of appearance and that he could either

begin jury selection and start the trial or Petitioner could proceed with his public defender.

Attorney Sheets stated that he would need a minimum of two to three weeks to prepare.  After a

back and forth, the trial court ultimately stated that jury selection would take place that week and

that trial could commence the following Monday so as to give Mr. Sheets time to prepare.  Six

days later, on August 22, 2011, the parties again appeared, and Mr. Sheets filed an Omnibus Pre-

Trial Motion containing a motion for continuance which noted that a six day continuance was

not sufficient time for him to review the huge amount of evidence, especially considering that

jury selection consumed two-and-a-half days out of that six day time period.  The prosecutor

objected to the continuance, but Mr. Sheets responded that six days was not an adequate time to

prepare a homicide case.  The trial court then stated:

> All right.  So what I'm going to do is I am going to dismiss this jury.  I'm going to
> ask them to come back on Monday, and I will give you the two weeks that you
> initially requested to prepare for this trial.

(HT2, 8/22/11, at 7-8.)  The trial court provided Attorney Sheets with seven more days to

prepare, for a total of thirteen days after he entered his appearance.  Trial in fact commenced the

following Monday, August 29, 2011.

Petitioner raised this claim on direct appeal, and he specifically argued that the trial

court abused its discretion by refusing to provide counsel with more than thirteen days to prepare

for trial because Attorney Sheets, whom he did not have the funds to retain until right before jury

---

[4] Concerning his late retention in the case, Mr. Sheets noted that the family had obtained funds from insurance
proceeds and had in fact tendered those funds only after Mr. Sheets entered his appearance.

selection began, did not have an adequate opportunity to prepare a defense.  He also argued that

the trial court's ultimatum to either move forward with the public defender that he did not trust

due to the defender's lack of preparation, or proceed to trial with new counsel of his choosing

who was unprepared, compromised his right to counsel.

Citing the trial court's following rationale for refusing to provide Attorney Sheets with a

longer continuance, the Superior Court found no abuse of discretion in the court's decision.

(Resp't Exh. 13, ECF No. 13-1, pp.142-45.)

> Between this [c]ourt's crowded trial schedule and administrative duties, the busy schedules of three active trial attorneys and speedy trial considerations, finding a mutually available and agreeable trial date was, in itself, a feat of gigantic proportions.  At the time of the scheduled trial date, the case had been pending for over one (1) year.  The co-Defendants had no reason to waive their speedy trial rights further, nor should they have been asked to.  [Petitioner] certainly had ample time to retain counsel or, if he did not have the funds, to file a motion seeking appointment of new counsel. He did neither.  Instead, on the day jury selection was scheduled to begin, a new attorney advised the court that he *would be* entering his appearance and asking for a continuance the *following* day.

> * * *

> . . . .  This case was about *three* defendants, all of whom had Constitutional rights to be protected.  Their family members and friends arranged their schedules to be present for the trial.  Their attorneys spent additional time finalizing their preparations for this case, when other matters required their attention.  The Commonwealth subpoenaed many witnesses who were present for the start of the trial, including police officers, who had either come to [c]ourt on their regularly-scheduled work shift when they could have been protecting our citizenry, or they were appearing outside their shift, in which case they were being paid additional money from an already-strapped budget.  Mr. Sheets could have avoided all of this disruption by simply filing his request for continuance on the day he was retained.  He chose not to, and so this [c]ourt's ire was entirely justified.

> In the end, this [c]ourt did give Mr. Sheets a two (2) week continuance to prepare.  Mr. Sheets appeared to have used the time well, as he seemed to this [c]ourt to be as well prepared as the other defense counsel.  Mr. Sheets' representation of [Petitioner] was perhaps the *most* effective of the three (3) defense counsel, with well-thought out questions and thorough cross-

examinations.  Ultimately, the guilty verdict was a reflection of the overwhelming evidence against [Petitioner] and the other co-defendants, not a result of any failings or lack of preparation on Mr. Sheets' part.  This claim is meritless.

(Resp't Exh. 9, ECF No. 13-1, pp.66-67.)

The Sixth Amendment right to assistance of counsel includes a basic right to counsel of choice.  *See* Powell v. Alabama, 287 U.S. 45, 53 (1932).  "The right to counsel of choice, however, is not absolute."  United States v. Voigt, 89 F.3d 1050, 1074 (3d Cir. 1996) (citing Wheat v. United States, 486 U.S. 153 (1988)).  Indeed, "'there is no absolute right to a particular counsel,' and the right to choose a particular lawyer 'must be balanced against the requirements of the fair and proper administration of justice.'"  McMahon v. Fulcomer, 821 F.2d 934, 942 (3d Cir. 1987) (quoting United States ex rel. Carey v. Rundle, 409 F.2d 1210, 1215 (3d Cir. 1969); United States v. Rankin, 779 F.2d 956, 958 (3d Cir. 1986)).

In both Pennsylvania and Federal courts an application for a continuance is left to the sound discretion of the trial judge, whose ruling the appellate court will leave undisturbed in the absence of an abuse of discretion.  *See* Commonwealth v. Hicks, 98 A.2d 478, 479 (Pa. Super. 1953); Franklin v. South Carolina, 218 U.S. 161, 168 (1910) ("It is elementary that the matter of continuance rests in the sound discretion of the trial court, and its action in that respect is not ordinarily reviewable.  It would take an extreme case to make the action of the trial court in such a case a denial of due process.")  The Supreme Court has stated that "[t]here are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process."  Ungar v. Sarafite, 376 U.S. 575, 589 (1964).  Courts must look to the "circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied."  Id.  As the Supreme Court has explained, "[t]rial judges necessarily require a great deal of latitude in scheduling trials.  Not the least of their problems is that of assembling the

witnesses, lawyers, and jurors at the same place at the same time, and this burden counsels against continuances except for compelling reasons.  Consequently, broad discretion must be granted trial courts on matters of continuances; only an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay' violates the right to assistance of counsel."  Morris v. Slappy, 561 U.S. 1, 11-12 (1983) (quoting Ungar, 376 U.S. at 589).

Petitioner is not entitled to habeas relief on this claim.  The Superior Court's denial of this claim was not contrary to and did not involve an unreasonable application of federal law.  As previously stated, trial courts are afforded broad discretion when deciding continuances, and the trial judge's decision here was not "so arbitrary as to violate due process."  Ungar, 376 U.S. at 589.  As the trial court explained, it considered its own schedule, the schedules of all three defense attorneys, the schedules of the witnesses in the case, the constitutional rights of all the defendants and the need to proceed in a speedy manner.  Nevertheless, it allowed private counsel to enter his appearance and ultimately granted him a two-week extension, the amount of time counsel initially requested on the day he entered his appearance.  Simply put, the trial court's decision to not grant Petitioner's counsel a longer continuance was appropriate under the circumstances.  The court's exercise of its discretion did not rise to the level of a due process violation.  Accordingly, claim one will be denied.

## ii.    Claim Two

In Petitioner's second claim he argues that his trial counsel was ineffective for failing to object to Detective Sherwood's comment that referenced Petitioner's right to remain silent.  Specifically, at trial, the Commonwealth presented a sweatshirt which appeared to depict a photograph of Petitioner and Ferguson, one of his co-defendants, standing next to each other and holding guns.  During cross-examination of Detective Sherwood, trial counsel attempted to elicit

testimony from the detective that the photograph on the sweatshirt could not be authenticated.  It is in this context that the following exchange occurred.

> Q:     The only thing factually in this case that photo proves is that presumptively [Ferguson], despite what he told detectives when he gave them a statement, knew [Petitioner], right?
>
> A:     If we go by everything else you just asked me, no.  They could have been photoshopped together.
>
> Q:     Exactly.
>
> A:     Yeah, I mean-
>
> Q:     So there is no authentication whatsoever of this photograph; is there?
>
> A:     Not unless [Petitioner] or [Ferguson] want to do that.

(N.T. Trial, 8/29/11-9/2-11, at 517.)  Petitioner contends that Detective Sherwood's final comment impermissibly called attention to his failure to testify, and impermissibly infringed on his constitutional right to remain silent.  He claims that, had trial counsel objected to the detective's testimony, there is a reasonable probability that the outcome of his trial would have been different.

Petitioner raised this claim in his PCRA Petition and the PCRA court determined that there was no error for counsel's failure to object to Detective Sherwood's comment, observing that the comment was made in response to a question by trial counsel himself and was designed to elicit the very response that was provided, *i.e.*, that the photograph on the sweatshirt did not establish that Petitioner and Ferguson knew each other because it could have been photoshopped, and that Detective Sherwood was unable to authenticate it.  The PCRA court additionally noted that the Commonwealth did not solicit, or otherwise repeat, refer to, or capitalize on Detective Sherwood's comment in any way.  Finally, the PCRA court found that the statement itself was

harmless because the evidence of Petitioner's guilt was overwhelming and there could be no viable argument that this statement defense counsel elicited by design was the cause of the guilty verdict.  (Resp't Exh. 25, ECF No. 14-1, pp.82-83.)

On appeal, the Superior Court agreed with the PCRA court that Detective Sherwood's statement was actually favorable to Petitioner since "she discounted the evidentiary value of the photograph" and that "the comment was made in a context unlikely to suggest to the jury that Petitioner's silence was the equivalent of a tacit admission of guilt" given that her comment merely suggested that the Commonwealth could not authenticate the photograph without confirmation from the individuals purportedly depicted in it.  (Resp't Exh. 29, ECF No. 14-1, pp.183-84.)  The Superior Court also agreed that the comment was harmless given the overwhelming evidence of Petitioner's guilt and that there was ample proof to convict him, "effectively neutralizing any minimal prejudice effect from the detective's improper comment." Id., p.185.  Finally, the Superior Court found that "the improper reference could not have seriously prejudiced [Petitioner] in the eyes of the jury, since the jury had previously heard testimony that [Petitioner] was not always silent, and had made a taped confession to police." Id. The appellate court nevertheless noted that the trial court gave a "no adverse inference" charge to the jury prior to its deliberations, instructing its members that they "must not draw any inference of guilt or any other inference adverse to [Petitioner] from the fact that [he] did not testify." Id. (quoting N.T. Trial, 9/2/11, at 587).  It ultimately concluded that Petitioner had failed to establish that, in light of his audiotaped confession to police and the surveillance videotape showing him fleeing from the scene with a firearm, the outcome of the proceeding would have been different had trial counsel objected to Detective Sherwood's comment.  Id., pp.185-86.

To begin, Petitioner's claim is one of ineffective assistance, which is governed by the familiar two-prong test set forth in Strickland v. Washington, 466 U.S. 668 (1984).  Under Strickland, a petitioner must demonstrate that: (1) counsel's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's error, the result would have been different.  Id. at 687.  For the deficient performance prong, "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms."  Id. at 688.  To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id. at 694.  With respect to the sequence of the two prongs, the Strickland Court held that "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."  Id. at 697.  For AEDPA purposes, the Strickland test qualifies as "clearly established Federal law, as determined by the Supreme Court."  Williams v. Taylor, 529 U.S. 362, 391 (2000).

As noted in the beginning of this section, in order to obtain relief Petitioner must first show that the Superior Court's adjudication of this claim was "contrary to" or involved an "unreasonable application of" Strickland.  See 28 U.S.C. § 2254(d)(1).  Here, the Superior Court analyzed Petitioner's claim under the three-pronged test for ineffective assistance of counsel claims in Pennsylvania, which requires a petitioner to plead and prove:  (1) that the underlying claim has arguable merit; (2) that no reasonable basis existed for counsel's actions or failure to act; and (3) that there is a reasonable probability that the outcome of the proceedings would have

19

been different but for counsel's action or inaction.[5]  *See* (Resp't Exh. 29, ECF No. 14-1, pp.176-77) (citing Commonwealth v. Johnson, 139 A.3d 1257, 1272 (Pa. 2016)).  The Third Circuit has held that this standard is not "contrary to" Strickland, the standard enunciated by the United States Supreme Court in judging ineffectiveness claims.  *See* Wertz v. Vaughn, 228 F.3d 178, 204 (3d Cir. 2000).  Thus, given that the state court applied a standard that does not contradict Strickland, and the Court is unaware of a case with materially indistinguishable facts where the Supreme Court arrived at the opposite result, the Superior Court's adjudication of this claim satisfies review under the "contrary to" clause of § 2254(d)(1), [6] and the inquiry now becomes whether its decision was an objectively unreasonable application of that law or whether it was based on an unreasonable determination of the facts in light of the evidence.  *See* Williams, 529

---

[5] Pennsylvania law for judging ineffectiveness corresponds with the Strickland standard.  Commonwealth v. Pierce, 527 A.2d 973, 976-77 (Pa. 1987); Commonwealth v. Kimball, 724 A.2d 326 (Pa. 1999).  Although Pennsylvania courts typically articulate a three-prong test for gauging ineffective assistance claims and Strickland sets forth its test in two prongs, the legal evaluation is the same, and the differences merely reflect a stylistic choice on the part of state courts.

[6] It is noted that the Superior Court stated that Petitioner failed to prove that "the outcome of the proceedings would have been different had trial counsel objected to Detective Sherwood's comment[,]" (Resp't Exh. 29, ECF No. 14-1, p.186), and not whether, as stated in Strickland, there was a "reasonable probability" of a different outcome.  At other points in its decision, however, the Superior Court correctly set forth Strickland's prejudice standard.  Id., p.176 (citing Commonwealth v. Johnson, 139 A.3d 1257, 1272 (Pa. 2016), and noting that for the prejudice prong, "a petitioner must demonstrate that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's action or inaction."); id., p.182, (noting that Petitioner "failed to demonstrate that there is a reasonable probability that the outcome of the proceedings would have been different but for trial counsel's inaction . . . .")  Therefore, this Court will not conclude that the Superior Court failed to apply the correct standard when it evaluated this claim.  Indeed, the Supreme Court has cautioned federal courts reviewing a state prisoner's habeas petition to not be too quick to assume that the state court applied the wrong law, even if the state court was imprecise in language it used in evaluating a claim, particularly when a frequently applied and well-known standard such as Strickland is at issue.  Woodford v. Visciotti, 537 U.S. 19, 24 (2002) (finding the Court of Appeals for the Ninth Circuit's "readiness to attribute error [to the state court] is inconsistent with the presumption that state courts know and follow the law," and is "also incompatible with § 2254(d)'s 'highly deferential standard for evaluating state-court rulings,' which demands that state court decisions be given the benefit of the doubt.").  In Visciotti, the Supreme Court admitted that even it has stated imprecisely Strickland's prejudice standard at points in some of its decisions, and noted that the California Supreme Court's shorthand reference to the Strickland standard that was not entirely accurate "can no more be considered a repudiation of the standard than can this Court's own occasional indulgence in the same imprecision."  537 U.S. at 24 (citing Mickens v. Taylor, 535 U.S. 162, 166 (2002); Williams, 529 U.S. at 393).  Nevertheless, even if this Court reviewed this claim *de novo* and without deference under § 2254(d), it still fails because the Petitioner has not demonstrated that, had counsel objected to Detective Sherwood's comment, there is a reasonable probability that the jury's verdict would have been different.

U.S. at 406 (" a run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause.")

Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult because the standards created by Strickland and § 2254(d) are both "highly deferential," 466 U.S. at 689; Lindh v. Murphy, 521 U.S. 320, 333, n.7 (1997), and when the two apply in tandem, review is "doubly" so, Knowles v. Mirzayance, 556 U.S. 111, 123 (2009). Indeed, the Strickland standard is a general one, so the range of reasonable applications is substantial. 556 U.S. at 123 ("And, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard."). Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable, but rather whether there is any reasonable argument that counsel satisfied Strickland's deferential standard. Harrington v. Richter, 562 U.S. 86, 105 (2011).

Under the doubly deferential judicial review that applies to a Strickland claim evaluated under the § 2254(d)(1) standard, Petitioner's claim of ineffective assistance of trial counsel does not merit habeas relief. Simply put, the state courts reasonably denied this claim after determining that counsel was not ineffective for failing to object to Detective Sherwood's comment for multiple reasons, not the least of all being that Petitioner could not demonstrate prejudice given the overwhelming evidence of his guilt, which included Petitioner's own confession that he was present at the scene and had a firearm with him and he was captured on surveillance video running from the scene. Accordingly, the Superior Court's conclusion that Petitioner had failed to establish ineffectiveness on the part of his trial counsel was reasonable

and its adjudication of this claim thus satisfies review under the "unreasonable application"
clause of § 2254(d)(1).  Finally, to the extent Petitioner argues in favor of relief under §
2254(d)(2), the Court also finds that the Superior Court's decision was not an unreasonable
determination of the facts in light of the evidence presented.  Petitioner is therefore not entitled
to habeas relief on this claim.

### iii.    Claim Three

In Petitioner's third claim he argues that his trial counsel was ineffective for failing to
object to Detective Sherwood's testimony that she could see from a silent surveillance videotape
that an officer was verbally telling Petitioner to drop his gun.  Petitioner points to the following
testimony during which Detective Sherwood, who had recovered the surveillance videotape,
explains its contents to the jury:

> At 3:22:02 you'll see [Officers Nicholas] Papa and [Tim] Matson chasing after
> Ferguson, and then [Officer] Papa now turns around, and he's coming back, and
> **at this point in this area he's telling [Petitioner] to drop his weapon.**  He's
> running for cover or what cover he can get to the left, and **he's ordering
> [Petitioner]** and engaging [Petitioner].

(N.T. Trial, 8/29/11-9/2/11, at 500) (emphasis added).  Petitioner raised this claim in his PCRA
Petition, claiming that because Detective Sherwood was not present at the scene, and the
videotape had no audio component, she was not permitted to testify regarding the officer's
instructions to him, and he asserted that he suffered prejudice as a result of counsel's failure to
object to the Detective's testimony.  The PCRA court disagreed, explaining

> . . . .  Detective Sherwood's testimony regarding the video was merely cumulative
> of [Officer] Papa's own testimony.  [Officer] Papa had already testified to the
> circumstances of his encounter with [Petitioner] as he fled the scene; the
> surveillance video confirmed and corroborated [Officer] Papa's testimony
> regarding the interaction.  The Detective who recovered the surveillance video
> was permitted to testify regarding its contents to aid the jury in their
> understanding of the footage.  She did not provide any new substantive testimony

> regarding Officer Papa's interaction with [Petitioner].  Again, because the
> admission of Detective Sherwood's testimony in this regard was proper and
> within this [c]ourt's discretion, counsel was not ineffective for failing to object to
> such a meritless claim.

(Resp't Exh. 25, ECF No. 14-1, pp.77.)  On appeal, the Superior Court stated that it could not see

how Petitioner suffered any prejudice "when Detective Sherwood told the jurors what they had

already heard from Officer Papa."  (Resp't Exh. 29, ECF No. 14-1, p.181.)  It thus concluded

that Petitioner was not entitled to relief because he could not demonstrate that there was a

reasonable probability that the outcome of the proceedings would have been different but for trial

counsel's inaction.  Id., p.182.

　　　The United States Supreme Court's standard governing ineffective assistance of counsel

claims found in Strickland has already been explained in relation to claim two, *supra*, and, like

claim two, in order to obtain relief Petitioner must either show that the Superior Court's

adjudication of this claim was "contrary to" or involved an "unreasonable application of"

Strickland, *see* 28 U.S.C. § 2254(d)(1), or "resulted in a decision that was based on an

unreasonable determination of the facts in light of the evidence presented in the State court

proceeding" *see* 28 U.S.C. § 2254(d)(2).

　　　When it evaluated this claim, the Superior Court applied Pennsylvania's three-prong

standard governing ineffective assistance of counsel claims, a standard that is not "contrary to"

Strickland.  *See* Wertz, 228 F.3d at 204.  Accordingly, the Superior Court's adjudication of the

claim withstands review under the "contrary to" clause of § 2254(d)(1).  Additionally, when it

denied this claim, the Superior Court found that Petitioner was not prejudiced as a result of

Detective Sherwood's testimony, which was merely cumulative of Officer Papa's testimony, and

it therefore concluded that Petitioner could not demonstrate a reasonable probability that the

outcome of his proceedings would have been different had counsel objected to it.  This was not

an "unreasonable application" of Strickland and thus the Superior Court's adjudication of this

claim also withstands review under the "unreasonable application" clause of § 2254(d)(1).  It

also satisfies § 2254(d)(2) because it was not based on an unreasonable determination of the

facts.  Accordingly, Petitioner is not entitled to relief on this claim.

### iv.    Claim Four

In Petitioner's fourth claim he argues that trial counsel was ineffective for failing to

object on the basis that Petitioner's right to a public trial was violated when the trial court

ordered that the courtroom doors be locked during the playing of his taped confession, and again

when it recharged the jury as to second and third-degree murder.

Petitioner raised this claim in his PCRA Petition and the PCRA court addressed it as

follows:

> As the record reflects, the audiotape of [Petitioner's] confession began to
> play and this [c]ourt noticed it was difficult to hear, so it interrupted the playback
> and asked that the courtroom doors be locked to prevent distractions for the jury.
> Similarly, it has been this [c]ourt's practice . . . for over 30 years to lock the
> courtroom doors during jury instructions to prevent spectator movement from
> distracting the jurors . . . [T]he record reflects that in both the audiotape playback
> and re-charge situations, this [c]ourt did not ask any spectators to leave the
> courtroom before the doors were locked.  Rather, the record clearly reflects that
> this [c]ourt only locked the courtroom doors in certain limited situations where
> audio quality was poor and juror attention was paramount.

(Resp't Exh. 25, ECF No. 14-1, p.72.)

On appeal, the Superior Court set forth the law with regards to a violation of the right to a

public trial, noting that such a violation is a structural error but "not every public trial violation

will lead to a fundamentally unfair trial, and the failure to object to that violation does not always

deprive the defendant of a reasonable probability of a different outcome."  (Resp't Exh. 29, ECF

No. 14-1, p.178) (citing <u>Weaver v. Massachusetts</u>, 137 S. Ct. 1899, 1908 (2017)).  It further

noted that to prove a public trial violation via an ineffective assistance claim a petitioner "must

satisfy the prejudice prong of the ineffectiveness test by showing either a reasonable probability

of a different outcome in the case, or that the particular violation was so serious as to render the

trial fundamentally unfair."  <u>Id</u>.  Ultimately, it stated that it was not persuaded that a public trial

violation occurred, but even if it had, it went on to explain why Petitioner was not prejudiced and

why such an error on the part of counsel did not lead to a fundamentally unfair trial.

> . . . . [Petitioner] offered no evidence suggesting either a reasonable probability of
> a different outcome but for trial counsel's failure to object, or that counsel's
> alleged shortcomings led to a fundamentally unfair trial.  The proceedings were
> not conducted in secret or in a remote place, and no member of the public was
> asked to leave the courtroom.  This is not a situation where a potential juror
> during voir dire, or a witness on the stand, might have behaved differently had the
> public been present.  Rather, the public was permitted to remain in the courtroom
> if they so desired.  Moreover, the closure decision was made by the judge in an
> effort to prevent distraction and noise caused by people entering or leaving the
> courtroom, in order to ensure that the jurors could hear the audiotape and
> concentrate on the instructions provided during recharging.  Thus, even assuming
> a public trial violation occurred, [Petitioner] has failed to establish, by a
> preponderance of the evidence, that, in light of his audiotaped confession to police
> and the surveillance videotape showing him fleeing from the scene with a firearm,
> the outcome of the proceedings would have been different had trial counsel
> objected to the trial court's orders to briefly lock the courtroom doors.

<u>Id</u>., pp.179-80.

    In <u>Weaver</u>, the United States Supreme Court addressed a Sixth Amendment public-trial

violation in the context of a claim of ineffective assistance of counsel, and it held that, in this

context, the proper standard to apply is the familiar one under <u>Strickland</u>.  137 S. Ct. at 1910-12.

While the Sixth Amendment public-trial right "is important for fundamental reasons," the Court

explained, "in some cases an unlawful closure might take place and yet the trial still will be

fundamentally fair from the defendant's standpoint."  <u>Id</u>. at 1910.  Therefore, "when a defendant

raises a public trial-violation via an ineffective-assistance-of-counsel claim, <u>Strickland</u> prejudice is not shown automatically." <u>Id</u>. at 1911.  The defendant must bear the burden "to show either a reasonable probability of a different outcome in his or her case or . . . to show that the particular [error in his or her case] was so serious as to render his or her trial fundamentally unfair." <u>Id</u>. at 1911.

The Superior Court in this case was not convinced that a public trial violation actually occurred, but it acknowledged the Supreme Court's holding in <u>Weaver</u> and ultimately concluded that, given the amount of evidence introduced at trial of his guilt, Petitioner had not established that he was prejudiced by counsel's failure to object to the trial court's orders to lock the courtroom doors on the two complained of occasions or that counsel's failure to do so led to a fundamentally unfair trial since no member of the public was asked to leave the courtroom and the doors were locked only briefly to prevent distraction and noise.  This was not "contrary to" or an "unreasonable application of" <u>Strickland</u>, the standard the Supreme Court held in <u>Weaver</u> must be applied for a claim asserting a public trial violation in the context of ineffective assistance of counsel.[7]  Accordingly, the Superior Court's adjudication of the claim withstands review under § 2254(d)(1).  It also satisfies § 2254(d)(2) because it was not based on an unreasonable determination of the facts.  Accordingly, Petitioner is not entitled to relief on this claim.

---

[7] It is noted that the Superior Court stated that Petitioner failed to prove that "the outcome of the proceedings would have been different had trial counsel objected to the trial court's orders to briefly lock the courtroom doors[,]" (Resp't Exh. 29, ECF No. 14-1, pp.179-80), and not whether, as stated in <u>Strickland</u>, there was a "reasonable probability" of a different outcome.  However, for the reasons stated in footnote 6, this Court will not conclude that the Superior Court failed to apply the correct standard when it evaluated this claim.  Nevertheless, even if this Court reviewed this claim <i>de novo</i> and without deference under § 2254(d), it still fails because the Petitioner has not demonstrated that, had counsel objected to the trial court's orders to briefly lock the courtroom doors, there is a reasonable probability that the jury's verdict would have been different.

For all of the above reasons, the Petition will be denied in the alternative.

**D.  Certificate of Appealability**

A court should issue a certificate of appealability where a petitioner makes a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  Slack v. McDaniel, 529 U.S. 473, 484 (2000). Petitioner has not made the requisite showing in this case.  Accordingly, a certificate of appealability will be denied.

Dated: March 23, 2021.

Lisa Pupo Lenihan
United States Magistrate Judge

Cc:    Tyree Gaines
       JU-1576
       SCI Frackville
       1111 Altamont Blvd.
       Frackville, PA  17931

       Counsel of Record
       (*via CM/ECF electronic mail*)

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

TYREE GAINES,                               )
                                            )        Civil Action No. 19 – 1160
                        Petitioner,         )
                                            )
        v.                                  )        Magistrate Judge Lisa Pupo Lenihan
                                            )
SUPERINTENDENT BRITTAIN and                 )
ATTORNEY GENERAL OF THE                     )
STATE OF PENNSYLVANIA,                      )
                                            )
                        Respondents.        )

## ORDER

**AND NOW**, this 23rd day of March 2021;

**IT IS HEREBY ORDERED** that the Petition for Writ of Habeas Corpus (ECF No. 1) is **DISMISSED** as untimely and **DENIED** in the alternative.

**IT IS FURTHER ORDERED** that a Certificate of Appealability is denied.

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment in favor of Respondents and mark this case **CLOSED**.

**AND IT IS FURTHER ORDERED** that pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure, Petitioner has thirty (30) days to file a notice of appeal as provided by Rule 3 of the Federal Rules of Appellate Procedure.

Lisa Pupo Lenihan
United States Magistrate Judge

Cc:     Tyree Gaines
        JU-1576
        SCI Frackville

1111 Altamont Blvd.
Frackville, PA  17931

Counsel of Record
(*via CM/ECF electronic mail)*